IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ESTHER JASSO and**
**ARMANDO JASSO,**

        Plaintiffs,

      vs.                           No. 2:13-CV-00897-MCA-CG

**JOHNSON & JOHNSON; ETHICON,**
**INC.; ETHICON WOMEN'S HEALTH**
**AND UROLOGY; GYNECARE, INC. and**
**ONA BERNAL,**

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before this Court on *Plaintiffs' Motion to Remand and Supporting Brief* [Doc. 9], and *Plaintiffs' Motion for Expedited Hearing on Motion to Remand* [Doc. 10]. The Court, having considered the parties' submissions, the applicable law, and otherwise being fully informed in the premises, finds that Plaintiffs' *Motion to Remand and Supporting Brief* [Doc. 9] is well taken and should be granted.  Further, this Court finds that this matter can be resolved on the briefing and, therefore, denies *Plaintiffs' Motion for Expedited Hearing on Motion to Remand* [Doc. 10].

## I.      BACKGROUND

On November 16, 2010, Esther Jasso (Mrs. Jasso) had a Gynecare Prosima Device (GPD) surgically implanted into her pelvic region to treat her Pelvic Organ Prolapse. [Doc. 1-1 at 4] The operation occurred at Mountain View Regional Hospital in Las Cruces, New Mexico.

[Id.] After the GPD was implanted, Mrs. Jasso allegedly suffered various complications, including vaginal extrusion, urinary tract erosion, pain, mental anguish, dyspareunia, and vaginal and bladder prolapse. [Doc. 1-1 at 2] As a result of the complications, Mrs. Jasso had to undergo an additional corrective surgery, and was unable to maintain employment. [Doc. 1-1 at 2]

In July 2013, Esther and Armando Jasso (collectively, Plaintiffs) filed a *Complaint for Damages for Products Liability and Related Claims* against Johnson & Johnson, Ethicon, Inc., Ethicon Women's Health and Urology, Gynecare, Inc., and Ona Bernal, in Bernalillo County's Second Judicial District Court alleging the following causes of action: 1) Strict Liability-failure to adequately warn; 2) Strict Liability-defective design; 3) Strict Liability-defective manufacture; 4) Negligence; 5) Negligence Per Se; 6) Breach of Implied warranty; 7) Breach of Express Warranty; 8) Fraud; 9) Fraud by Concealment; 10) Negligent Misrepresentation; 11) Violation of New Mexico's Unfair Practices Act, NMSA 1978, Section 57-12-1 *et seq.*; and 12) Loss of Consortium. [Doc. 1-1]

On September 18, 2013, Defendants filed a *Notice of Removal*, removing the case to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. [Doc. 1] In their *Notice of Removal*, Defendants assert that there is complete diversity of citizenship between the resident Plaintiffs and the non-resident Defendants, who, Defendants argue, are the only proper parties to this action. [Doc. 1 at 5] Defendants assert the following citizenships for the purposes of establishing diversity jurisdiction under 28 U.S.C. §1332:  1) Johnson & Johnson is a citizen of New Jersey because its place of incorporation and principal place of business are in New Jersey; 2)

Defendant Ethicon, Inc. is also a citizen of New Jersey;[1] 3) Ethicon Women's Health & Urology is an unincorporated division of Ethicon, Inc. and, therefore, cannot be sued;4) Gynecare, Inc. merged with Ethicon, Inc. and is no longer in existence and cannot be sued; and 5) Defendant Ona Bernal (Defendant Bernal) is a citizen of New Mexico; however, Defendants contend that because Defendant Bernal was fraudulently joined, his citizenship should be disregarded for the purposes of establishing diversity jurisdiction. [Doc. 1 at 6] Alternatively, Defendants assert that even if this Court concludes that Defendant Bernal was not fraudulently joined, this case should not be remanded back to state court because this Court has jurisdiction pursuant to 28 U.S.C. § 1331. [Doc. 1 at 23-24]

## II.    STANDARDS

A fraudulent joinder analysis is a jurisdictional inquiry. Bio-Tec Env't, LLC v. Adams, 792 F.Supp. 2d 1208, 1214 (D.N.M. 2011). Pursuant to 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a); Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000). Diversity jurisdiction may be maintained only where there is complete diversity, meaning none of the defendants hold citizenship in the same state where any of the plaintiffs hold citizenship.  Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996).

In order for a case that was originally filed in state court to be removed to federal court on diversity grounds, the removing party must demonstrate that all of the prerequisites of

---

[1] Defendant Ethicon, Inc.'s place of incorporation is New Jersey, as well as its principal place of business.

diversity jurisdiction contained in 28 U.S.C. § 1332 have been satisfied.  The burden of

establishing removal rests on the party asserting federal jurisdiction, and all doubts regarding

removal are to be resolved in favor of the non-removing party.  See Adams, 792 F.Supp. 2d at

1213-14.

In some instances, such as here, a removing party may assert diversity jurisdiction on the

grounds that a non-diverse party was fraudulently joined.  Our Tenth Circuit has explained that

> [u]pon specific allegations of fraudulent joinder the court may pierce the
> pleadings, . . . consider the entire record, and determine the basis of joinder by
> any means available. . . . The joinder of a resident defendant against whom no
> cause of action is stated is patent sham . . . and though a cause of action be stated,
> the joinder is similarly fraudulent if in fact no cause of action exists. . . . This does
> not mean that the federal court will pre-try, as a matter of course, doubtful issues
> of fact to determine removability; the issue must be capable of summary
> determination and be proven with complete certainty.

Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964).  The party asserting

fraudulent joinder bears a heavy burden inasmuch as that party must demonstrate that there is no

possibility that the non-removing party would be able to establish a single cause of action against

the joined party in state court.  See Montano v. Allstate Indemnity, 211 F.3d 1278, * 1-2 (10th

Cir. 2000) (unpublished disposition) (quoting Hart v. Bayer Corp, 199 F.3d 239, 246 (5th Cir.

2000)). This burden must be established through clear and convincing evidence.  Smith v.

Blockbuster Entertainment Corp., 100 F.3d 878, 880 (10th Cir. 1996).  Therefore, "[t]his

standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed,

the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to

the state court where the action was commenced."  Montano, 211 F.3d at *2.

In evaluating fraudulent joinder claims, the district court is to resolve all disputed

questions of fact and all ambiguities in the controlling law in favor of the non-removing party,

and then "determine whether that party has any possibility of recovery against the party whose joinder is questioned." Id. at * 1.  "[R]emand is required if any one of the claims against the non-diverse defendant . . . is possibly viable."  Id. at * 2 (citing Green v. Amerada Hess Corp., 707 F.2d 201, 206 (5th Cir.1983)).  A court must turn to state law to consider whether any of the plaintiff's claims are "possibly viable."  Montano, 211 F.3d at *2; see Hart, 199 F.3d at 246 ("To prove their allegation of fraudulent joinder [the removing defendants] must demonstrate that there is no possibility that [the plaintiff] would be able to establish a cause of action against them in state court." (alterations in original) (internal quotation marks and citation omitted)).  If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Zufelt v. Izuzu Motors America, LLC, 727 F.Supp. 2d 1117, 1129 (D.N.M. 2009) (internal quotation marks and citation omitted) (discussing that a claim is considered to be "possibly viable" if with amendment, the complaint would state a cause of action).  "Under this standard it is entirely possible a case should be remanded even though the claims brought against the non-diverse defendant will ultimately be subject to dismissal." Sanders v. DJO, LLC, et al., 728 F.Supp 2d. 1200, 1203 (D.N.M. 2010).

In addition to 28 U.S.C. § 1332, a federal court may exercise jurisdiction over a removed action pursuant to 28 U.S.C. § 1331.  Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case is said to arise under federal law when a plaintiff's statement of his or her case shows that it is based on federal law, or when federal questions are "essential" to the asserted state-law claims. See Devon Energy Prod. Co., L.P. v. Mosaic Potash

Carlsbad, Inc., 693 F.3d 1195, 1202-03 (10th Cir. 2012) (internal citations omitted).  Federal

courts, therefore, will have jurisdiction over state-law claims that "necessarily raise a stated

federal issue, [that is] actually disputed and substantial, [and that] a federal forum may entertain

without disturbing any congressionally approved balance of federal and state judicial

responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 321

(2005) (Thomas, J., concurring) (internal citations omitted).

  This Court will apply these standards in assessing whether its exercise of jurisdiction

would be proper.

## II. DISCUSSION

  In their *Notice of Removal* Defendants asserted two grounds for this Court's exercise of

jurisdiction, diversity of citizenship pursuant to 28 U.S.C. § 1332 based on fraudulent joinder,

and federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This Court will evaluate each of

these grounds in turn.

### A. *Fraudulent Joinder and Diversity Jurisdiction*

  Plaintiffs assert that Defendant Bernal was not fraudulently joined as Defendants contend

in their *Notice of Removal*, and request that this Court issue an order remanding this matter back

to state court. [Doc.1 ; Doc. 9].  Defendants, in support of their fraudulent joinder claim, assert

that Plaintiffs' Complaint is conclusory and factually deficient as it relates to Defendant Bernal.

[Doc. 1 at 8] In their complaint, Plaintiffs allege that

> Defendant Bernal was responsible for detailing physicians in the 'New
> Mexico Territory', which included [Mrs.] Jasso's implanting physician Dr.
> Lopez. [Defendant] Bernal would frequently visit Dr. Lopez in an attempt to
> increase his use of Defendants['] vaginal mesh products. Defendant Bernal was
> aware of the risks associated with the Promisa mesh, however [he] intentionally
> and negligently withheld information.

. . .

As a result of Defendant Bernal's sales activities within the State of New Mexico, including the misrepresentation and failure to provide safety information to New Mexico physicians including Dr. Lopez, Bernal ranked twenty-seventh in sales of vaginal meshes for the entire company.

[Doc. 1-1 at 7-8]  Defendants assert that Plaintiffs failed to offer any factual support for their allegation that Defendant Bernal withheld safety information, and failed to assert facts establishing a causal connection between Platiniffs' allegations and Defendant Bernal. [Doc.1 at 10]

Plaintiffs cite to the similarities of the facts in this case with the those in the case of St. Martin v. Wyeth, No. 03-CV-0637, 2003 WL 26127739 (D.N.M. August 14, 2003), in support of their request for remand.

In St. Martin, the plaintiffs sued Wyeth, Inc., and "Francisco Anaya, a New Mexico resident and sales representative for Wyeth" in state court alleging that they sustained damages resulting from the use of two diet drugs, Pondimin and Redux. St. Martin, 2003 WL 26127739, at *2.  The court discussed the high burden of proof associated with fraudulent joinder, noting that "[a] plaintiff states a viable claim against a non-diverse defendant if there is some factual fit between the plaintiff's allegations and the pleaded theory of recovery." Id. at *5. The court, recognizing that the plaintiffs' complaint was not very factually specific, concluded that it did in fact state a viable claim against defendant Anaya "by alleging that he marketed and sold Redux in New Mexico, he represented to physicians and pharmacies that Redux was safe, he knew or should have known that the Redux was harmful, and that his actions or omissions proximately caused the personal injuries suffered by [the plaintiffs]." Id. at * 7.

Here, Plaintiffs' complaint contains a sufficient level of specificity. They allege, in

relevant part, that that "Defendants manufactured, sold and/or distributed the subject synthetic

mesh system which was implanted in Mrs. Jasso." that Defendants promoted the mesh product as

safe and effective. [Doc. 1-1 at 6,9]. They further allege that

> [t]he Promisa system is and was dangerous and presented substantial danger to
> patients, including [Mrs. Jasso], who [was] implanted with [the] Promisa system.
> These risks and dangers associated with the Promisa . . . system were known or
> knowable to Defendants at the time that Plaintiff was implanted with the device.
> Defendants failed to provide warnings of such risks and dangers to [Mrs. Jasso] . .
> .and said risks were not known or knowable to Plaintiff at the time of
> implantation.. . . The Promisa system was used by [Mrs. Jasso] in a way that was
> reasonably foreseeable to Defendants. . . . As a result of the Promisa system,
> [Mrs. Jasso] suffered debilitating injuries. . . .

[Doc. 1-1 at  9]

The Court finds that Defendants have not provided clear and convincing evidence that

Plaintiffs failed to provide a reasonable factual basis for their claims against Defendant Bernal.

Defendants further assert that Plaintiffs fail to state a viable claim against Defendant

Bernal because all of the allegations raised against him involved conduct that would have

occurred when he was acting within the course and scope of his employment. [Doc. 1 at 13]

Plaintiffs respond that under New Mexico law an agent can be liable for his or her own tortious

conduct, regardless of whether the principal is liable. [Doc. 9 at 7] While both parties cite to

Bourgeous v. Horizon Healthcare Corp., 872 P.2d  852 (N.M. 1994), in support of their

assertions, the Court finds Defendants' reliance on Bourgeous is misplaced on this point.

In Bourgeous, the New Mexico Supreme Court addressed a plaintiff-employee's

retaliatory discharge claim against two other employees and her employer.  The Court noted that

although "officers or employees of corporations can be held personally liable when they commit

intentional torts," a "corporation can act only through its officers and employees, and any act or

omission of an officer or an employee of a corporation, within the scope or course of his or her employment, is an act or omission of the corporation."  Id. at 855.

Plaintiffs again direct this Court's attention to St. Martin, to support their assertion that an agent may be held liable regardless whether the principal is liable. [Doc. 9 at 7] The St. Martin court addressed the defendants' contention that an agent cannot be held liable for the alleged wrongful conduct of his employer, and concluded that defendant Anaya could be held liable for his own tortious actions whether or not he was acting for a disclosed principal. 2003 WL 26127739, at * 8.  The St. Martin court looked to Kreischer v. Armijo, 884 P.2d 827, 829 (Ct. App. 1994), where the New Mexico Court of Appeals, relying on the Restatement (Second) of Agency §§ 348, 350 (1985), concluded that "an agent may be held individually liable for his own tortious acts, whether or not he was acting for a disclosed principal."  To the extent Defendants rely on Bourgeous for the principle that Defendant Bernal's employment relationship with Ethicon, Inc. absolved him of any liability for his own tortious acts, this Court agrees with other  New Mexico courts that such a principle is limited to the facts of Bourgeous and that Bourgeous' holding is only applicable in the context of retaliatory discharge.  See Kreischer, 884 P.2d at 829; see also Stinson v. Berry, 943 P.2d 129, 134 (Ct. App. 1997) (discussing Bourgeous' holding, the court noted that "although the case appears to hold that individuals acting within the scope and course of their employment for a corporation cannot be held individually liable in tort, we believe our Supreme Court intended such holding to be limited to the particular facts of that case, where the nature of the claim resulted from the employment relationship).  Because the district court is to resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party, this Court concludes that

New Mexico's agency law does not preclude Plaintiffs' claims against Defendant Bernal.

Moreover, Plaintiffs' strict liability failure to warn claim against Defendant Bernal appears viable.  In 2009, in Zufelt v. Izuzu Motors America, this Court examined whether the seller of an automobile could be held strictly liable under strict liability and negligence theories. 727 F.Supp 2d at 1118-19.  In Zufelt, the personal representative of a passenger who was killed in a roll-over vehicle crash brought a New Mexico state action against the vehicle's manufacturer, the automobile dealer, and the driver of the car.  727 F.Supp 2d at 1119. The personal representative asserted products liability and negligence claims against the manufacturer and dealer, and a negligence claim against the driver. Id. The manufacturer removed the action to federal court and the personal representative moved to remand the matter to state court, asserting lack of diversity jurisdiction. Id. The personal representative asserted she had a cause of action against the dealer, who sold the allegedly defective automobile, under either strict liability because the dealer sold the defective vehicle, or under traditional negligence principles by establishing the dealer was negligent with the warnings that were provided. Id. at 1129.  The court stated that "[b]ecause New Mexico law recognizes a cause of action for a seller's liability arising from its having sold a defective product, as well as liability arising out of ordinary negligence, . . . [the personal representative] has asserted a possibly viable claim."  Id. The court further noted that in New Mexico "all parties in the chain of distribution of a defective product are strictly liable." Id. at 1129-30; see Brooks v. Beech Airport Corp., 902 P.2d 54 (N.M. 1995) (reaffirming the doctrine of strict products liability for defectively designed products); Parker v. St. Vincent Hosp., 919 P.2d 1104, 1106 (Ct. App. 1996) ("Ordinarily, any entity engaged in the business of selling or otherwise distributing products is strictly liable for

distributing a defective product.").[2]  Therefore, the imposition of "strict liability hinges on whether the party in question has any participatory connection for personal profit or other benefit, with the injury causing product and with the enterprise that created the consumer demand for and reliance upon the product." Zufelt, 727 F.Supp 2d at 1130 (internal citation and quotation marks omitted).  The matter was remanded to state court. Id. at 1131.

Here, similar to the automobile dealer in Zufelt, Plaintiffs' strict liability claim against Defendant Bernal may be viable based on his status as a party in the chain of distribution.  Thus, viewing all disputed questions of fact and all ambiguities in the controlling law in favor of Plaintiffs, this Court concludes that Plaintiffs have stated a possibly viable claim against Defendant Bernal and may be able to recover under a theory of strict liability-failure to warn.

**B.**      *Federal Question Jurisdiction*

Defendants assert that even if this Court concludes that Defendant Bernal was not fraudulently joined, it could still exercise jurisdiction under 28 U.S.C. §1331. As stated above, a case is said to arise under federal law when the plaintiff's statement of his or her case shows that it is based on federal law, or when federal questions are "essential" to the asserted state-law claims. See Devon Energy, 693 F.3d at 1202-03 (internal citations omitted).

Defendants contend that by citing the federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 321 *et seq.*, "in their negligence per se cause of action, Plaintiffs appear to be asking a

---

[2] The Committee Commentary to UJI 13-1415 NMRA (2013) provides that "[f]ailure to warn is a theory under strict products liability," and " a product sold without an adequate warning of danger from a particular condition or use of the product is defective; in the language of these instructions, [and the product is said to present] . . . an unreasonable risk of injury." UJI 13-1415 (internal quotation marks and citation omitted); see also Restatement (Second) of Torts § 402A (1965).

court of competent jurisdiction to hold that their state law negligence per se [claim] permits

recovery of damages for violations of the FDCA, thereby making a substantial question of

federal law an ingredient of their right to recover under their state law negligence per se claim."

[Doc. 1 at 24]

  This Court is not persuaded by this argument.  The resolution of Plaintiffs' negligence

per se claim does not create a "substantial question of federal law" and cannot serve as the basis

of this Court's jurisdiction.  The Supreme Court in, Merrell Dow Pharm. Inc. v. Thompson, held

there was no federal jurisdiction over a negligence per se claim premised on a violation of a

federal law that was not itself subject to private enforcement. 478 U.S. 804, 812 (1986). There,

the law at issue before the Court was the FDCA.  The Court, in concluding that there was no

federal jurisdiction over a negligence per se claim that is premised on a violation of a federal

law, stressed the importance of the fact that the FDCA lacked a private right of action.  Merrell

Dow Pharm. Inc., 475 U.S. at 812 ("The significance of the necessary assumption that there is no

federal private cause of action thus cannot be overstated. . .. We think it would . . . flout, or at

least undermine, congressional intent to conclude that the federal courts might nevertheless

exercise federal-question jurisdiction and provide remedies for violations of that federal statute

solely because the violation of the federal statute is said to be a 'rebuttable presumption' or a

'proximate cause' under state law, rather than a federal action under federal law.")

  Here, Plaintiffs' negligence per se claim is premised on the FDCA; the same statute at

issue in Merrel Dow Pharmaceutical, Inc.. Just as the FDCA could not serve as the basis of

federal jurisdiction in Merrel Dow, it cannot serve as the basis of this Court's jurisdiction in this

case.  Furthermore, because a negligence per se action requires a violation of a statute, and

neither the New Mexico statute at issue in this case nor the FDCA provide for a private cause of

action, Plaintiffs have failed to assert a viable negligence per se claim against Defendant Bernal.

This Court concludes that exercising jurisdiction under 28 U.S.C. § 1331 would be improper.

_C._     _Attorney's Fees_

     Plaintiffs have requested fees and costs under 28 U.S.C. § 1447(c). Section 1447(c)

provides that an order remanding a removed case to state court "may require payment of just

costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28

U.S.C. § 1447(c).  Absent unusual circumstances, fees should generally not be awarded when the

removing party has an objectively reasonable basis for removal.  Martin v. Franklin Capital

Corp., 546 U.S. 132, 136 (2005).  Because Plaintiffs have not directed the Court's attention to

any unusual circumstances that would warrant an award of attorney's fees, and the Court finds

that Defendants appear to have had an objectively reasonable basis for removal, the Court will

not award Plaintiffs their fees and costs in this case.

**III.**     **CONCLUSION**

     Section 1332(a) requires complete diversity of citizenship.  Therefore, Because

Defendants have failed to demonstrate that Defendant Bernal was fraudulently joined as a party,

Plaintiffs' _Motion to Remand_ is **GRANTED**. Furthermore, because this matter can be decided

without oral arguments from the parties, _Plaintiffs' Motion for Expedited Hearing on Motion to_

_Remand_ is **DENIED**. [Doc. 10].

     **IT IS THEREFORE ORDERED** that _Plaintiffs' Motion for Expedited Hearing on_

_Motion to Remand_ [Doc. 10] is **DENIED**.

     **IT IS THEREFORE FURTHER ORDERED** that _Plaintiff's Motion to Remand_ [Doc.

9] is **GRANTED**, and this case is remanded back to the Second Judicial District Court of the State of New Mexico.

      **SO ORDERED** this 4th day of December, 2013, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
Chief United States District Judge

.